Judge Diaz, Judge Motz, Judge Davis, may it please the Court, my name is Jeff Ornstein and I represent Michael Wolff, who is the Chapter 7 trustee for the bankruptcy estate of First Pay. We'll be arguing this morning that summary judgment was issued by Judge Maness on a preference case on remand from this Court, Judge Davis sat on the panel, was improperly issued in this case. I have to tell you that Judge Maness is a little bit confused and smiles when he tells the Bar that he's now decided this case twice and has been reversed each time, even though he's ruled on both sides of the issue. And I have to hope that he understood that when he ruled against us, hoping that he would be reversed again. When we were here the last time, the Court reversed the decision of Judge Maness and Judge Mazzetti based upon a finding that the Court had been saddled with a finding that the property at issue in this case was property of the debtor without any facts or record having established that this was property of the debtor, and remanded the case for the On remand, after Judge Maness ruled in this case, Judge Mazzetti said that he was trying to decipher exactly what may have been in the mind of the Fourth Circuit, but that what he had concluded is that the Fourth Circuit had thought that there should be some way, and I'm quoting, some way in which to make sure that this money passes through to the government. I think that that is what was on the mind of Judge Mazzetti and why we're here today with the decision that we have, notwithstanding the fact that the law of the State of Maryland, which is the law that has to be applied in this case, is clear that when you have money that is commingled, and that is not the subject of an express trust or a statutory trust, cannot be found to be a constructive trust. And can you tell me what case so holds on the Maryland Court of Appeals? Yes, Your Honor. It would be the Levin cases, the Gault case, Brown v. Coleman, Dunlop-Sand, and ultimately, Your Honor, an unreported decision of this case in Schrader, Schrader v. Schlossberg. Well, I'd rather follow the Maryland Court of Appeals than an unreported opinion of the Fourth Circuit on a question of state law. And I would agree with you, Your Honor. And what's the best case for your proposition? The best case, Your Honor, would be either Brown v. Coleman or ultimately the Levin case. And I talk about the Levin case because we are dealing with a type of trust called an implied trust. There are two types of implied trusts under Maryland law. There are constructive trusts and there are resulting trusts. Before you get to that, the government's position was that there was, in fact, an express trust in this case. Why is that not correct? The Bankruptcy Court made a finding, Your Honor, that there was, in fact, no express trust here. After reviewing the language of the service agreement between the clients and First Pay, Judge Mattis found nothing in the record to suggest that the money was required to be held in trust. And to the contrary, the facts established that when First Pay withdrew the money from each of its clients' accounts, it was not only taking the taxes that those clients had the money that the clients were using to match, but also First Pay's own money, the fees that were due and payable to First Pay. And so, as a result, there was no obligation to hold all of those monies in trust. Well, I think that latter issue goes to the trace question, but wasn't there some evidence that there was, in fact, a fiduciary relationship here between the provider and the clients? I don't believe there is any such evidence, Your Honor. There is an agreement that says that First Pay will collect the money from the clients, they will hold the money, and when it is due according to the IRS rules and regulations, will pay that money over. Well, that means that First Pay had no discretion to use the funds other than to pay these obligations. Doesn't that suggest some kind of an agency? Even if there was an agency relationship, Your Honor, it doesn't change the fact, and I understand that I'm going back to tracing, but I don't think that we can avoid the tracing issue in answering your question. I prefer to look at this as taking this whole set of circumstances backwards from before the time that First Pay transferred the funds to the government, when First Pay had simply taken each of the clients' monies and put it into its accounts in a commingled state. Had the bankruptcy been filed at that point, we would have had a situation where there were in excess of $28 million of claims held by each of the First Pay clients who had had money deducted from their accounts waiting to be transferred to the United States, but not yet transferred, and there would have been less than those amount of claims to pay those monies back to each of the clients. In that event, whether through trust, express trust, implied trust, whatever the case may have been, agency, how would it have been determined which of the clients got their money because there wasn't enough for everybody? That's the purpose of the preference statute. The preference statute says that no client, no creditor of a debtor should be treated any better than any other unless there is a priority that's set forth in the bankruptcy code. A priority, a secured claim, but where you've got a whole host of unsecured creditors, all you can do is treat them equally. Had this money not gone out of First Pay's hands to the government, we would have been in a situation where none of those clients could have argued that this is my money held in trust and has to come back to me because there were too many claims. Under those circumstances, what would have been required is the usual 547 analysis. The fact that the money actually did get transferred to the government pre-petition is a fact that really shouldn't be relevant in looking at what the analysis of this issue is. If the clients couldn't have gotten their money back in full when the money was in First Pay's hands, how would the fact that the money had been paid over to the government for the benefit of some of those creditors, but not others, have given those creditors additional rights? It just isn't logical and that's why the preference statute requires that when you have similarly situated clients, similarly situated creditors, the money has to be shared and the pain has to be shared equally. Judge Davis, I don't know that I answered your question. Well, was it First Pay's money? Well, ultimately that's the question that this Court sent back to Judge D'Ess. And I listened to you just now and you seem to have lied that question. Well, the answer is yes, it is First Pay's money. And the reason that it is First Pay's money is absent an express trust, and I understand Judge D'Ess that there is an argument that it was an express trust, but that was not the finding below. Absent an express trust, you don't have a trust, you don't have an implied trust unless there is a finding made under the facts and circumstances that the money is held in a constructive and resulting trust. But I don't read, I don't think I read Levin and these other cases to mean that segregation is the sine qua non, the way you believe it is. Or a resulting trust. I think you misquote or misinterpret those cases in so saying. Well, Levin is the only case that addresses the resulting trust directly. Correct. So saying what's said in all those other cases doesn't deal with the resulting trust. Well, I'll come back to resulting trust. Well, let's stay with resulting trust and not come back to it. So what we have with the resulting trust then is the Levin case. And the Levin case addressed the resulting trust. And in Levin, what the court said is that it would allow these funds, it would find that these funds were held in a resulting trust because two things. Number one, they could be, they had been segregated and had always been segregated. And number two, they could be traced for that reason. Okay, now where do you find that language? Your Honor, this is at 246 Maryland 717 and 230 A2nd 9596, which is- Okay, I have the Maryland site, so I'm sorry. We're talking about Levin here. Yes, ma'am. Yes, Your Honor. 246 Maryland at 717. And the court at this point is talking about the findings of the auditor. And what the auditor says is that- I'm sorry. Give me the A2nd site then. The A2nd site is 230 A2nd 9596. Okay. And this is all on page 29 of your brief. It is on page, cited on 29 in full in my brief. Yes, ma'am. Cited and quoted. Yes, ma'am. Go ahead. Okay, this is the auditor, right? Yes, ma'am. And so the auditor says the fact that the monies were segregated and can be traced shows that Security Financial treated the funds deposited as the property of First Guarantee military rather than one or more general assets. Right. To permit the claims of First Guarantee and military to prevail in these proceedings, it is only necessary to find that Security Financial received the deposits of First Guarantee and military and that Security Financial still has in its possession the deposit. Right. The court continues after now no longer quoting from the auditor. Right. While we cannot agree with the auditor's overly broad conclusion that the mere segregation of the funds plus their traceability will permit an original owner of property to recover it from his insolvent transferee, we affirm the orders of the Circuit Court for Baltimore City denying the appellant's exceptions. The court continues then, Your Honor, at 230 A2nd 96 saying identification of the trust property either in its original or altered form is essential to its recovery by the Seneca Trust. Right. Then continuing on, Your Honor, the court talks about the issue of debtor-creditor relationships and trust-trustee relationships. Right. And says that you cannot have a trust if it's a debtor-debtor-creditor relationship because the trustee has to have, or excuse me, because the beneficiary has to have some rights in that property. And the court goes on to say that where there is, and the court at this point is quoting from Dunlop Sand and Gravel and from the opinion in Dunlop Sand and Gravel at 191 Atlantic 706 and says that if the intention, I'm sorry, let me find the correct. All the circumstances must be considered, right? The first question, and this is on pages 31 and 32 of my brief, the first question submitted by the appeal is whether the Baltimore Trust Company held the fund, deposited or lodged with it as a trustee, or whether it was indebted to the petitioner for its repayment as a mere business debt. Continuing, it talks about the restatement of law of trust, and it points out in section 12 that a debt is not a trust. We have a stipulation in this case that at stipulation number 24, the party stipulation, that each time that First Pay took money from one of its clients, it created a debtor-creditor relationship. Based on that stipulation, the fact exists. This is not a finding by the court. This is not my characterization. It's a stipulation by the parties that the relationship between the parties is of debtor-creditor. And where you have a debtor-creditor relationship, you cannot have a trust relationship. Now, I see my time is running out, so I just want to make one quick point, and that is while we're talking about resulting trust, resulting trust are implied trust, and there's not a single Maryland case that distinguishes implied trust from resulting trust for purposes of what the requirements are to create a trust. And each of the cases talking about constructive trust has a specific requirement of tracing. It's just not been addressed directly head-on in the cases of resulting trust. I'm happy to answer any questions. I've reserved time for rebuttal, and I can answer more at that time. All right. We'll hear from you in rebuttal. Good morning, and may it please the court. I'm Mike Hongs from the Department of Justice here on behalf of the United States. Would you mind addressing his last argument first? That would be this point about the stipulation of the parties? Yeah. Yes. That's an interesting argument that was not really raised below. Right. Not before. Before, yes. Exactly. It came up in the reply brief. I have to admit, I noticed when I looked more carefully, it is alluded to, at least, in the trustee's opening brief. They cite Dunlop, but they don't really quite tee it up that clearly. And looking back, it appears that they did not raise that in the bankruptcy court. They raised it at the oral argument on the district court appeal after the briefing had been done, and then they raised it in a motion for reconsideration, and the government responded and said, well, this is really too late to raise this. But we've never really directly addressed it, so I'll address it now to say that I don't think, in addition to whether it has perhaps been waived by not being raised timely, I don't think that's what the parties intended by that stipulation, because if it is true, the Dunlop case, or maybe another case, says that there's basically three possibilities. You can have a debtor-creditor relationship, you can have a trust relationship, or you could have an agency relationship, and that those are sort of mutually exclusive. Well, if that was true, then there's an inconsistency in the stipulations, because we also attach to the stipulation the agreement between First Pay and the clients, and the agreement specifically says, I, the client, appoint First Pay as my limited agent. So it's also stipulated that there was an agency relationship. I can only surmise that the parties, in entering into that paragraph 24, meant it in some context other than this preclusion of trust context. They were explaining the relationships between these parties, what money was debited at various points. I don't think anybody intended that to mean a concession. If it had, the trustee would have jumped up in the bankruptcy court and said, aha, the government's just stipulated the entire case away. So I don't think the trustee really intended that either. That's about the best answer I can give you on that. Do you think it was sort of a belt and suspenders thing? In essence, yes. Yes. And really, the parties have argued multiple theories on this. I mean, we've really argued four theories below. Perhaps that's putting it mildly. And I would emphasize, you don't necessarily have to affirm on the trust basis that the bankruptcy court found. It's a perfectly good basis. But even before you get to that, there's the question of sort of the conduit theory of the whole thing. Without even getting into trust, just looking at the agreement, looking at the relationship between the parties, looking at the standards of the industry and what does it mean to hire a payroll services company, clearly, just as a matter of common sense, this was not first pays money. It was understood that First Bay had to turn it over to the IRS. It couldn't just do what it wanted with this money. But not to beat a dead horse, but what possible meaning could be given to that stipulation? It does, it just seems so out of place in this case. It does seem a little out of place. I mean, belt, suspenders, and an extra pair of suspenders. Perhaps. I don't get it. It's not a debt. It's clearly not a debt. The money was given for forwarding on, right? I agree. I mean, it's only a debt in the most expansive kind of layperson's sense of the word. I mean, it's a little surprising that lawyers would go there, frankly. I agree. I wasn't counsel below. I don't mean it as a dodge. I can't vouch for exactly what they meant by saying that. Stipulation of law, I guess, characterizing it as a debt, and stipulations of law don't bind the court, right? Yes, right. That's my view. It's the characterization of whatever this is. Yeah. And it may have been meant as a layperson. It may have been stipulated it was a trust. Or cantaloupe. Yes. Or cantaloupe. Or cantaloupe. Right. But I agree. It is a little odd. But really, you could affirm even on the basis of that Land Tamers case from the First Circuit, where the court just analyzed a relationship between parties under this federal program where a contractor was installing Internet access for public schools, and there was reimbursement from a federal agency, and the money flowed to the contractor, which then went out of business before transferring the money onto the public schools. And the First Circuit in that case said, well, we don't even have to call this a trust or get into that. And I thought it was very interesting. At the end of her opinion, Judge Lynch explained, while constructive trust language is sometimes used in these cases, it sometimes may be a little dangerous to go down that route because trust is used in so many other contexts in the law. Perhaps you don't even have to get into that. It's just clear from the statute and from the language of the contracts in that case that there was no beneficial interest in the money being held by the contractor. Just as here, it should be clear that First Pay did not own this money, did not have an interest in it. Couldn't just do what it wanted with this money. The contractor said, get it. If we agree with you that there is a trust, whether express, resulting, or otherwise, what's the practical effect with respect to the employers in this case? Apparently, the government has a record of payments made for each employer. The problem is there's no record of the allocations made on the front end, the payments made to the payroll provider. So, the trustee argues that there's a substantial possibility of double payments, overpayments on the part of these employers. Is there a mechanism to resolve this at your level? I'm not sure if I quite understand the question. What I understand from the record here, from the stipulations and from reading the trial transcripts and everything else, is that overall the IRS has not been fully paid or wasn't fully paid with this $28 million. Certain clients were still owing money. Some clients were completely paid. Do you know who owes what? Yes, in general, and the IRS has pursued that. Do you know who paid what into the payroll provider? You don't know that, do you? No, we don't know what was paid to the payroll provider. That's the problem. There's this potential here for some employers to be left holding the bag, which is precisely what the trustee is attempting to avoid. I think that is the problem in cases like this, when a payroll provider fails, that the client still does owe the money. So the answer is too bad? Well, I wouldn't say it quite that way, but yes, ultimately, I think another way to look at it might be in a situation where someone has contracted with a company that turns out to be crooked. It's a real shame, but as between the government and the client that contracted with them, the burden falls on the client as to holding the bag, in a sense. And I mean, I can think of a case, it doesn't involve this exact issue, it involved only one accountant and one client that I argued a couple of years ago in the Second Circuit called Citywide Transit, where you had an accountant who turned out to have been a crook, who was embezzling money from the client that he was supposed to be paying the taxes for, and he got caught, and he actually was prosecuted criminally and died before he was sentenced, but at the end of the day, the client ended up having to pay some of the taxes twice. The client had paid the taxes to the accountant, who'd stolen the money, but they still owed the money to the IRS, and the Second Circuit ultimately concluded that, yes, too bad, in essence. That's certainly consistent with Justice Alito's recent opinion in the Fourth Amendment context, right? It's sort of a, you know, you take the risk, who you live with, right? And so... I'm not familiar with it. Only you, wait a minute, but it's true. Only I could go there, but yeah, if you have a roommate who lets the police in and conduct the search, the court says, hey, you know, assumption of the risk, that principle is at work here, right? I mean, I don't like it, I don't... It's awful that some people are going to be on the hook. I guess to bring it back to this little arena here, that the client had the relationship, and so the client made the choice to go with these defrauders. Federal government didn't make that choice. Federal government is sitting out here, you know, if we're looking at innocent parties, federal government has never made the choice to do that, so it's more innocent, and somebody has to bear it. Yes. Innocent one, or more innocent two? Yes, and it is in the record that the IRS did waive penalties as to these clients, and it worked out payment arrangements with them, and gave them sort of as generous a deal as it could. I mean, the trustee may disagree with that, but in general, it's stated in the record that the IRS did not come down on the clients like a ton of bricks. It did understand that they were in a difficult position and tried to be as sympathetic as it could about this. But I think that's a good way to put it, as between different innocent parties, the government is the party that really was not even involved in the decision to hire a payroll company. All it wants is the tax money. Yeah. Maybe you can go through, since you've spent a lot of time in your papers talking about trust, and I understand your initial position, that that's totally unnecessary, but what about the argument that even for a resulting trust, you have to have tracing? I don't understand the cases as directly saying that. We address this a little bit in our brief by saying essentially it doesn't necessarily make sense in the case of a resulting trust. There really is a difference between resulting trusts and constructive trusts. Constructive trusts are set up in a situation, they don't look to the intent of the parties, which is what the resulting trust looks to. The resulting trust looks to, was this a situation where it appears that the parties intended there to be a trust? Maybe almost like a near miss, it didn't rise to the level of an express, but it's- Yeah, it's a very close cousin to the express trust that my colleague was talking about. In essence. That's the way I would read it. The constructive trust, on the other hand, is a situation that's closely related to unjust enrichment. In other words, it's a situation where somebody receives some money and it would be unjust to allow them to keep it because it seems clear that it should be passed along to somebody else. The problem in those kinds of cases is it may be harder to identify the trust rests that you need to create a trust. In those cases, it makes more sense that the courts have focused on tracing requirements. In fact, the constructive trust discussion in the restatement is, I think, in- what did you just say? When you want to get the money back. It's not in the trust section. Is it under unjust enrichment? It is. That's what it is. Okay. Okay. I forgot that myself, but there is a difference legally between constructive trust and resulting trust and there are cases that talk about needing to show tracing in the constructive trust area that doesn't necessarily imply that that would be the same rule in a resulting trust and we're just not aware of a case that really squarely says that that has to be the And in addition to the fact that there is, while it's true that the individual client's monies cannot be traced through to the IRS, it is also true, I don't think anybody here would contend, that FirstPay gave money to the IRS that was not the money of some client. In other words, there was a commingling here between what might be FirstPay's assets. It legitimately collected a little fee from all of these clients for doing the work. And that was mingled with the tax money, but nobody's suggesting that FirstPay took some of its own money and gave that to the IRS. The problem is it didn't give enough money to the IRS overall. So it's not that it was giving money that it shouldn't have given to the IRS, it's that it didn't give the IRS enough money. So in that sense, it's traceable that it all is client money that should have gone to the IRS. Is there an implied trust that is not a resulting trust or a constructive trust? Or does that exhaust the field? I have to say I'm not a trust expert. That is beyond my knowledge, I don't know. There may be another doctrine out there. You also rely on this Supreme Court case. Yes, the Beshear case. And that is a case that we say would apply to, if you reject our other arguments, that that still should apply to approximately $20 million of the $28 million, which is money that is, and I'm going to use this T word again, it's a little confusing, what is commonly called trust fund taxes. This is the portion of the taxes that were withheld from the employee's pay. And the Beshear case establishes that regardless of whether or not somebody does any sort of segregation or putting things in separate accounts, that trust exists as to a certain amount of money and it's created when the money is withheld by the employer. But there was no intermediary in Beshear. Does that make a difference? I don't think it makes a difference. The Ninth Circuit seemed to think it did. We don't think it does. There was, in a sense, an intermediary in Beshear, in the sense it was a bank. I mean, it was not, they weren't holding piles of cash in their safe, there was a bank. But we don't think that that necessarily should make a difference in these sort of cases. Because a voluntary transferee or a purchaser with notice acquires and holds property subject to the same trust that existed before. That's the King v. Richardson case from this court. And we don't think, at the end of the day, that there's a good reason for making that make a difference in the Beshear rationale. But I acknowledge there is, in that sense, it is a bit of a distinction. Has anybody gone after the estate of the gentleman who was first pay, to your knowledge? I don't know. I don't know one way or the other. He died in the Virgin Islands in a boating accident. The record is very murky on that. There were allegations that he might have faked his death or something. It almost sounded like a John Grisham novel or something. But I don't know the outcome. It's unknown to happen. I guess. No, I don't know what's happened in that regard, though. If the panel doesn't have any more questions, I'm happy to sit down at this point. What, if any, impact is there in the IRS's complicity in bringing this mess about through inattention to this addressing issue, the address of the companies? That is something that the trustee had originally attempted to pursue with count one of the complaint. I think the bankruptcy court addressed that in the conclusion of its opinion here on review and basically said, well, we acknowledge the trustee was doing what he thought was the right thing to do. The problem is he doesn't have standing to bring that kind of remedy. You also get into problems of getting injunctive relief or declaratory relief against the IRS. It's difficult to bring a sort of tort-like action against the IRS and say, you were negligent. You should pay money. You have sovereign immunity problems and everything else. All I can say is I think- Is this the IRS's treatment of some of the companies post-bankruptcy? In other words, you're waiving penalties and that kind of thing. Yes. I think IRS has done what it can to offer some, to be as sympathetic as it can within the bounds of the law to some of these companies. But I don't think the IRS really acknowledges that it is the IRS's fault, per se. I think one has to understand the trustee, I think, may have initially been a little confused about this. In the original briefing of the previous appeal, I remember there was some discussion of these people had not filled out forms to have their address changed. And it turns out that in IRS procedural manuals and maybe even in the revenue rulings or something, there were procedures that say when the IRS gets a new tax return from somebody with a new address on it, it changes the address, which is actually kind of logical. I mean, they're just happy that somebody filed the tax return and they're going to update it. They're not trying to make people jump through a lot of hoops of filling out specific forms. So when they get a tax return with a new address, they say, OK, I guess this is this person's new address now. And it was not wrong for the IRS to do that. Now, whether the IRS should have noticed that so many of them were coming from this one company, I really don't know. It seems like a lot. But, you know, if you think of the context of the entire country, I don't know that. And a lot of this is done automatically. It's done by computers. I don't know if anybody's actually looking at this and seeing how many mailings. And somebody at the company, no matter how small, should have been noticing that they weren't getting mail from the IRS anymore. Yeah, you would think. You would think. At some point. At some point. Yeah. You would think. All right. Well, if there are no further questions, I thank the court very much for its time and attention. Your Honor, in terms of the blame of innocence or the question of who was innocent in this transaction, that issue was addressed both by the Bankruptcy Court, and it's at Appendix 149, as well as by the District Court at Appendix 389, which found the IRS to be at fault in this circumstance. But that said, because of the anti-injunction rules, there was nothing they could do about it. More importantly, to answer a question, address a question that you asked, Judge Diaz, to the government, when FirstPay sent the money to the IRS, to the Treasury, it was accompanied by a report of how the money was to be applied. Those documents have disappeared. So I don't think that we can say that Client C, who paid the money to FirstPay, and who may have had their money sent by FirstPay to the government, actually didn't have it applied. We sought that in discovery. We had to file a motion to compel. Judge Mattis ultimately granted that, and that's what led to these stipulations after over 4,000 requests for admissions were served. So there is no evidence that clients who actually paid the money to FirstPay and FirstPay who actually sent it to the Treasury got credited, and now these clients are being required to pay a second time. And that takes me back to, if we want to go back to the resulting trust, which I do, it takes me back to where I started, which is, if we look at this as, I don't remember which of the judges said it, but as the resulting trust being a close cousin of the Express Trust, when FirstPay took the money from the clients, whether it was a resulting trust, an Express Trust, what have you, FirstPay was holding $28 million, and the clients had claims of $35 million. If each client had an unfettered right to ask to get their money back because FirstPay was holding it in a trust, in a resulting trust, in an Express Trust, whatever have you, how were they going to get that money when there wasn't enough to pay each one? They couldn't. The only way that they could receive their money was for the trustee to take that money and spread it out, because it was deemed to be the estate's money because the money could not be traced, and pay it to everyone individually in a program here. Part of my concern with your approach there is, you seem to be collapsing what I regard as a temporal element to the whole notion of resulting trust. I mean, the name tells us a lot. It's a backward-looking phenomenon, isn't it? I mean, stuff happened, you know, the world's in a cocked hat now, and now we have to figure out what to do with these assets because stuff happened. It's not a resulting trust when the funds are being held by FirstPay, pre-bankruptcy, right? Well, no. You don't suggest that. I do suggest that, Your Honor. You do? I think the resulting trust is based upon the facts and circumstances of the intentions between the parties. So if we accept, which, and I'll make the leap. Well, I'm sorry, I don't mean to cut you off, but surely these companies would come in to some kind of court proceeding with FirstPay holding $28 million, and if I were their lawyer, I'd say FirstPay is my, my client's the principal, FirstPay's the agent, and my principal wants his money back. And you would... That wouldn't be a resulting trust. That would be a legal claim for money paid and received, had and received under Maryland law. But it would have to be one of two things. FirstPay was either holding the money because the client was a creditor of FirstPay, in which case they'd have the ability to get it back, or because FirstPay was holding it as a trustee for the benefit of that creditor, in which case... Well, let's not quibble over agent versus trustee in that context, but it's funds being held by an agent for the use of the principal. You want to call that a debt? You want to call that a trust? I'd call it money had and received. Well, but how do we separate, and I shouldn't be asking the questions, but how do we separate out the fact that FirstPay also had a fee that it took at the same time with that money that was co-mingled the very moment... They probably would never have earned a fee under the scenario we're talking about. We have the company coming back saying, okay, give me back my money. But that may be, but that's exactly, if we're looking at these facts, this is exactly the court had before it in Greenbelt, which was a homeowner's contract where money was given to the builder to buy a house. You couldn't have had a clearer situation that this was either going to be money that was an express trust or that close cousin, the resulting trust. It couldn't have been anybody else's money. It was for a specific item for the builder to build a house. And notwithstanding that fact, because that money got co-mingled with everybody else's money, the court determined that in a bankruptcy context, the creditor who gave that money to the homeowner couldn't step ahead of all the other creditors that were similarly situated and that it had to be returned as a preference. The facts in this case are on all fours with the Greenbelt Road case. It can't be distinguished. Now this court called it a constructive trust, interestingly, but based on the discussion we've had with the intention of the parties and the close cousin being the resulting trust, the Greenbelt Road case, those facts were no different, the intentions of the party were no different. In fact, the requirement in the contract that the money had to be held in an escrow account would have made it more akin to an express trust. But this court said, and I believe rightly so, that where you've got all this money co-mingled and you can't figure out how to give it back to the individuals, everybody shares. And there's the whole analysis in there, citing the Dunlop case, excuse me, citing the Page case, that constructive trust and that these trusts are not favored in the bankruptcy context because of how they elevate one creditor above the other. Yes, there's a temporal component, I agree with you, Judge Davis, but the reality is when we're looking at the substance of these transactions, this was a lot of people's money in one person's hands and there was no way to identify who was going to get it back. That temporality didn't change when the money was transferred from first pay to the government. It just was held in a different hand. But the same facts and circumstances existed. A lot of money, more claims to be paid, no way to figure out how. And that's why this has to be viewed as not being a trust that can be established and honored without the ability to trace, and everyone agrees it can't be traced. Thank you very much. Thank you. We will come down and greet the lawyers and then take a short recess.
judges: Diana Gribbon Motz, Albert Diaz, Andre M. Davis